**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

THOMAS R. SIMANDL,

        Plaintiff,

v.

COLLEGE OF DUPAGE, CATHERINE
BROD, individually, and KAREN KUHN,
individually,

        Defendants.

Case No.

**Trial by jury demanded.**

## COMPLAINT

COMES NOW the Plaintiff, by and through his attorneys, The Case Law Firm, LLC, and for his Complaint against Defendants states as follows:

### Introduction

1.    This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., as amended (hereinafter "Title VII"), the Family and Medical Leave Act of 1993, 29 U.S.C. 2601 et seq., as amended (hereinafter "FMLA"), and Illinois common law.

### Jurisdiction & Venue

2.    Jurisdiction is conferred on this Court by the above-named statutes.  Venue of this action properly lies in the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. § 1391(b) and (c).

### Factual Allegations

3.    Plaintiff Thomas Simandl ("Plaintiff") is a citizen of the United States residing in Naperville, DuPage County, Illinois.

4.    At all relevant times, Plaintiff was an "employee" entitled to the protections of the aforementioned statutes.

5.    Defendant College of DuPage ("Defendant COD") is a public community college under the Illinois Public Community College Act, 110 ILCS 805/1-1 et seq. located in Glen Ellyn, DuPage County, Illinois.

6.    At all relevant times, Defendant COD was an "employer" subject to the mandates of the aforementioned statutes.

7.    Defendant Catherine Brod ("Defendant Brod") is a citizen of the United States residing in Elk Grove, DuPage County, Illinois.

8.    Defendant Karen Kuhn ("Defendant Kuhn") is a citizen of the United States residing in Naperville, DuPage County, Illinois.

9.    On or around July 15, 2002, Plaintiff began working with Defendant COD as the Director of Philanthropy.  On or around April 19, 2005, Plaintiff became the Manager of Development and on or around October 29, 2012, his title changed to Director of Development, Planned & Special Gifts.  He held this role for the remainder of his employment with Defendant COD.

10.    During his employment, Plaintiff always worked within the college's Foundation. The Foundation is a department within Defendant COD responsible for raising monetary and in-kind gifts to increase educational access to the college and enhance cultural opportunities for those within the college's community.

11.    In working within the Foundation, Plaintiff's roles and responsibilities focused on fundraising.

2

12.     Plaintiff always met and exceeded legitimate performance expectations.  He was one of the top fundraisers in the history of Defendant COD's Foundation and always maintained positive professional relationships with his donor contacts.

**Defendants Discriminate against Plaintiff based on his Gender**

13.     Plaintiff was the only male employee within Defendant COD's Foundation.  All other employees within that department, including Plaintiff's peers and supervisors, were female.

14.     In or around March of 2012, Defendant COD hired Defendant Brod as the Executive Director of the Foundation.  Defendant Brod is female.

15.     In or around June of 2013, Defendant Brod terminated Plaintiff's direct supervisor, Laura Mannion, Assistant Vice President of Development, after Ms. Mannion complained about Defendant Brod's behavior, including Defendant Brod's refusal to allow Ms. Mannion take time off to care for her dying father.

16.     In or around July of 2013, Defendant Brod hired Defendant Kuhn, who is female, to replace Ms. Mannion, and Defendant Kuhn became Plaintiff's direct supervisor.  Defendant Brod never considered Plaintiff for this position despite that he had worked for the College for over a decade and was a top performer.

17.     In or around October of 2013, Defendant Brod announced to a group of employees within the Foundation, including Plaintiff, that she had "a hard time trusting men." She then cited two examples in which men had disappointed her.

18.     From the time she was hired, Defendant Brod created and/or filled approximately ten positions within the Foundation.  Defendant Brod hired women for every single open position.

19.     During her time as Executive Director, Defendant Brod gave many of her female subordinates pay increases and promotions, but denied Plaintiff similar increases and promotions.

20.     Defendant Brod also spent much more time with her female subordinates and provided them with much more visibility and room for advancement within the College. Conversely, Ms. Brod avoided Plaintiff.

21.     When she did have to deal with him directly, Defendant Brod was frequently hostile toward Plaintiff.  As just one example: in or around early November of 2013, Defendant Brod told Plaintiff: "you talk in circles.  I purposely avoid you.  I'm too busy and don't have time."  Plaintiff had never before been criticized for his communication style.  Later that day, Plaintiff began having chest pains which continued for several days.

### Plaintiff Complains about the Discriminatory Treatment and Defendant Brod Retaliates against Him

22.     Several days after this incident, Plaintiff reported Defendant Brod's hostility to his supervisor, Defendant Kuhn.  Plaintiff complained that he believed that Defendant Brod was treating him in a hostile manner because of his gender.  Plaintiff also told Defendant Kuhn that he was afraid to report the conduct to Human Resources because he feared that Defendant Brod would retaliate against him as she had Ms. Mannion.  Plaintiff further told Defendant Kuhn that he was having chest pains.

23.     Defendant Kuhn subsequently reported Plaintiff's complaint to Human Resources.

24.     On or around November 14 and 15, 2013, Plaintiff had to take sick leave and go to the hospital because of his chest pains.  Plaintiff was diagnosed as suffering from acute

anxiety.  Plaintiff also suffers from severe arthritis, a condition which causes him chronic pain and which is significantly exacerbated by stress.

25.     When Plaintiff returned to work from sick leave on or around November 18, 2013, Defendant Brod angrily confronted him and told him that if he had "any further complaints, he should come to her, not HR."  Later that day, Plaintiff met with Maria McClain from Human Resources and once again complained about Defendant Brod's hostile and retaliatory treatment.  Neither Ms. McClain nor anyone else from Defendant COD took any steps to remedy the situation.

26.     On or around November 25, 2013, Defendants Brod and Kuhn met with Plaintiff to discuss his complaint regarding Defendant Brod's gender discrimination.   During this meeting, Defendant Brod was visibly angry and told Plaintiff that his "communication style annoys her" and that from then on, Plaintiff was not to speak to her directly, but rather, only through Defendant Kuhn.   Defendant Brod never imposed this communication directive on Plaintiff's female counterparts.  Defendant Brod also admonished Plaintiff for reporting her to Human Resources and told him not to go to do it again.

27.     Within minutes after this meeting, Defendant Brod came into Plaintiff's office and closed the door.  She then spent about a half hour to forty-five minutes demeaning Plaintiff, telling him that she did not want to "deal with him" and reprimanding him, for a third time, for reporting her to HR.  After this Plaintiff told Defendant Kuhn about Defendant Brod's meeting with him and what she had said.  Defendant Kuhn responded that she "didn't want to know about it."

28.    The next day, on or around November 26, 2013, Defendant Brod put an organizational chart on Plaintiff's desk chair which showed him in an unfunded position. Plaintiff reasonably understood this to be direct threat to his job.

29.     After this, Plaintiff's anxiety increased and he once again began having chest pains.  Plaintiff took intermittent sick leave over the next week in attempt to control his anxiety, but on December 4, 2013, Plaintiff's chest pains became so severe that he had to be rushed to the hospital by ambulance.   Plaintiff's doctors determined that Plaintiff's chest pains were related to his anxiety.

30.    On or around December 6, 2013, Plaintiff returned to work.  Upon his return, he told Defendant Kuhn that he feared that he did not have a future with the Foundation and complained that although he was the top fundraiser with the most experience and tenure of any of his peers, Defendant Brod continually refused to consider him for open positions, promotions, or pay increases, while conversely, giving his female counterparts pay increases and opportunities for advancement.

**Plaintiff's health deteriorates as a result of the hostile working environment and he takes FMLA leave.**

31.    From on or around January 16, 2014 through April 10, 2014, Plaintiff, per his doctors' advice, took FMLA leave as a result of his anxiety, systemic arthritis, and resulting acute pain.  Defendant COD approved the leave.

32.    Four days into his leave, Maria McClain from Human Resources (who knew Plaintiff was on medical leave) sent Plaintiff an email saying that unless she heard from him, she was closing her investigation of his earlier complaint of gender discrimination.  Plaintiff never received this email because he was on FMLA leave.

33.     When Plaintiff returned to work from his leave, he discovered that Defendant Brod and Defendant Kuhn had "audited" his work.  Defendants Brod and Kuhn had never audited any of Plaintiff's female counterparts.

34.     On or around April 25, 2014, Defendant Kuhn reprimanded him for a variety of alleged performance deficiencies, which she claimed to have uncovered during the "audit." None of the accusations were true.  Defendant Kuhn also reprimanded Plaintiff for the inconvenience his medical leave caused others.

35.     After his return from leave, Plaintiff also learned that Defendant Kuhn had spoken very negatively about him to his peers and that, among other things, she had told one of his co-workers that when he returned from leave, she planned to promote him and then fire him during his probationary period.

36.     Further, Plaintiff learned that Defendants Brod and Kuhn had inappropriately altered a donor document pertaining to an estate gift for one of Plaintiff's donors.  On or around May 27, 2014, Plaintiff emailed Defendant Kuhn and objected to the inappropriate alteration, which only further heightened Defendants Brod and Kuhn's hostility toward him.

37.     On or around June 9, 2014, Plaintiff filed another complaint with Ms. McClain in Human Resources, this time regarding Defendant Brod and Kuhn's discriminatory and retaliatory behavior following his return from FMLA leave.  Plaintiff told Ms. McClain that their treatment was negatively affecting his health and ability to do his job.

38.     Two weeks later, Ms. McClain met with Plaintiff and brought Defendant Kuhn to the meeting.  Prior to the meeting, Plaintiff told Ms. McClain that he was uncomfortable with Defendant Kuhn's attendance, but Ms. McClain insisted she attend the meeting.  Rather than addressing Plaintiff's complaints, Ms. McClain allowed Defendant Kuhn to lead the meeting.

Defendant Kuhn then, out of the blue, falsely accused Plaintiff of making an inappropriate comment seven months prior at a holiday dinner. It was clear to Plaintiff that Defendant Kuhn made this false statement in an effort to set him up for termination.

39. After this meeting Plaintiff's anxiety spiked. In conjunction with his doctors' concerns about the severity of his medical conditions, Plaintiff decided that he had no choice but to resign from his position. Plaintiff's doctors felt that if he remained in the job his health would be in serious jeopardy.

40. Thus, on or around July 7, 2014, Plaintiff told Defendants that he intended to "retire" on October 6, 2014.

41. Plaintiff had planned to work until at least age 66.

### Plaintiff's Exhaustion of Administrative Prerequisites

42. Plaintiff filed a Charge of Discrimination against Defendant COD with the Equal Equal Employment Opportunity Commission ("EEOC") on April 6, 2015, alleging in part, gender discrimination and retaliation. Attached as Exhibit 1 is a copy of that Charge.

43. Plaintiff received his Notice of Right to Sue from the EEOC on or around September 3, 2015. Attached as Exhibit 2 is a copy of that Notice.

### COUNT I: GENDER DISCRIMINATION IN VIOLATION OF TITLE VII AGAINST DEFENDANT COD

44. Plaintiff incorporates by reference the preceding paragraphs 1-42 as though fully set forth in this Count I.

45. Defendant COD intentionally discriminated against Plaintiff based on his gender in violation of Title VII by subjecting him to disparate expectations and treatment as compared to his female counterparts, creating a hostile working environment, denying him raises, promotions, and opportunities for advancement, and causing his constructive discharge.

8

46.     Defendant COD knowingly and willfully engaged in this discrimination with malice or reckless indifference for Plaintiff's federally protected rights under Title VII.

47.     As a direct and proximate result of said acts, Plaintiff has suffered loss of employment, loss of income and other employment benefits, reputational harm, great expense, emotional distress, humiliation, embarrassment and future lost income and benefits.

**WHEREFORE,** Plaintiff respectfully requests that this Court:

A.  Enter a finding that he was subjected to gender discrimination in violation of Title VII;

B.  Enter a finding that Defendant COD engaged in the gender discrimination with malice and reckless indifference for Plaintiff's rights under Title VII;

C.  Award Plaintiff lost wages and benefits;

D.  Award Plaintiff compensatory and punitive damages in an amount to be proven at trial;

E.  Award Plaintiff prejudgment interest;

F.  Award Plaintiff his reasonable attorneys' fees and costs incurred in bringing this action;

G.  Award Plaintiff any further relief this Court deems to be just and appropriate.

### COUNT II: RETALIATION IN VIOLATION OF TITLE VII
### AGAINST DEFENDANT COD

48.     Plaintiff incorporates the preceding paragraphs 1-42 as though fully set forth in this Count II.

49.     Plaintiff engaged in protected activity when he complained to Defendant Brod, Defendant Kuhn, and Human Resources, on repeated occasions, about Defendant Brod and Defendant Kuhn's gender discrimination.

9

50. After Plaintiff complained, Defendant COD subjected him to materially adverse employment actions including increased hostility, scrutiny, and criticism, false performance accusations and constructive discharge.

51. Defendant COD knowingly and willfully engaged in this retaliatory conduct with malice or reckless indifference for Plaintiff's federally protected rights under Title VII.

52. As a direct and proximate result of said acts, Plaintiff has suffered loss of employment, loss of income and other employment benefits, reputational harm, great expense, emotional distress, humiliation, embarrassment and future lost income and benefits.

**WHEREFORE**, Plaintiff respectfully requests that this Court:

A. Enter a finding that he was subjected to retaliation in violation of Title VII;

B. Enter a finding that Defendant COD engaged in the retaliation with malice and reckless indifference for Plaintiff's rights under Title VII;

C. Award Plaintiff lost wages and benefits;

D. Award Plaintiff compensatory and punitive damages in an amount to be proven at trial;

E. Award Plaintiff prejudgment interest;

F. Award Plaintiff her reasonable attorneys' fees and costs incurred in bringing this action; and

G. Award Plaintiff any further relief this Court deems to be just and appropriate.

## COUNT III
## DISCRIMINATION/RETALIATION IN VIOLATION OF THE FMLA
## AGAINST DEFENDANT COD

53. Plaintiff incorporates by reference the preceding paragraphs 1-42 as though fully set forth in this Count III.

54.     Plaintiff was eligible for FMLA protections.

55.      Defendant COD knowingly, intentionally and willfully discriminated and/or retaliated against Plaintiff for taking FMLA leave by subjecting him to increased  hostility, scrutiny, and criticism, false and defamatory performance accusations and constructive discharge.

56.     As a direct and proximate result of said acts, Plaintiff has suffered loss of employment, loss of income and loss of other employment benefits, great expense, emotional distress, humiliation, embarrassment and future lost income and benefits.

WHEREFORE, Plaintiff respectfully requests that the Court:

A.  Enter a finding that Defendant COD discriminated and/or retaliated against him in violation of the FMLA;

B.  Award Plaintiff lost wages in the form of back pay and, if applicable, front pay;

C.  Award Plaintiff damages for lost employee benefits;

D.  Award Plaintiff liquidated damages;

E.  Award Plaintiff attorneys' fees and costs; and

F.  Award Plaintiff any such further relief that the Court may deem just and equitable.

**COUNT IV: INTENTIONAL INTERFERENCE WITH EMPLOYMENT/
PROSPECTIVE ECONOMIC ADVANTAGE
AGAINST DEFENDANTS BROD AND KUHN**

57.     Plaintiff incorporates the preceding paragraphs 1-42 as though fully set forth in this Count IV.

58.     Plaintiff had a reasonable expectation of continuing his employment with Defendant COD.

59.     Defendants Brod and Kuhn knew of Plaintiff's expectation of continued employment.

60.     Defendants Brod and Kuhn intentionally, willfully, and without justification interfered with Plaintiff's employment and solely for their own benefit and/or to injure Plaintiff in retaliation for Plaintiff objecting to their inappropriate alteration of the donor document.

61.     Defendants Brod and Kuhn exercised this interference in their own personal interests and not in the interest of Defendant COD.

62.     Defendants Brod and Kuhn's wrongful interference has proximately caused Plaintiff to suffer damages including but not limited to, lost past and future wages and benefits, emotional distress and other great expense.

**WHEREFORE**, Plaintiff requests that this Court:

A.  Enter a finding that Defendants Brod and Kuhn intentionally interfered with Plaintiff's prospective economic advantage;

B.  Award Plaintiff damages resulting from Defendant Brod and Kuhn's intentional interference with Plaintiff's prospective economic advantage;

C.  Award Plaintiff punitive damages in an amount to be proven at trial; and

D.  Award Plaintiff any further relief this Court deems to be just and appropriate.

## **JURY DEMAND**

Plaintiff hereby demands trial by jury on all issues herein.

Respectfully submitted,

THOMAS R. SIMANDL

By:   /s/ Kristin M. Case
One of Plaintiff's Attorneys

Kristin M. Case
Kate Sedey
Kendra L. Kutko
The Case Law Firm, LLC
250 S. Wacker Drive, Suite 230
Chicago, Illinois 60606
Telephone (312) 920-0400
Facsimile (312) 920-0800